IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: : CASE NO. 11-58054-JRS
:
CAROL A. GODFREY, : CHAPTER 7
:
Debtor. :

**NOTICE OF REQUIREMENT OF RESPONSE TO TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; NOTICE OF DEADLINE FOR FILING RESPONSE; and NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that S. Gregory Hay, as Chapter 7 Trustee in the above captioned case, has filed his Trustee's Motion for Order Authorizing and Approving Sale of Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests (the "Motion") and seeks entry of an order granting the Motion. The Motion is being served with this Notice.

**Your rights may be affected. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the relief requested, or if you want the Court to consider your views, then on or before **October 31, 2011**[1], you or your attorney must:

(1) File with the Court a written response explaining your positions and views as to why the Motion should not be granted. The written response must be filed at the following address:

Clerk, United States Bankruptcy Court
Richard Russell Federal Building
75 Spring Street, SW, Room 1340
Atlanta, Georgia 30303

If you mail your response to the Clerk for filing, you must mail it early enough so that the Clerk will **actually receive** it on or before the date stated above; and

(2) Mail or deliver a copy of your written response to Trustee at the address stated below. You must attach a Certificate of Service to your written response stating when, how, and on whom (including addresses) you served the response.

---

[1] Objections filed electronically may be filed up to 11:59:59 p.m. All other objections must be filed by delivery to the Clerk's Office at or before 4:00 p.m.

If neither you nor your attorney files a timely response, the Court may decide that you do not oppose the relief sought in the Motion, in which event the hearing scheduled below may be canceled and the court may enter an order granting the Motion without further notice and without a hearing.

**NOTICE IS FURTHER HEREBY GIVEN** that if you or your attorney file a timely response, then a hearing on the Motion will be held on **November 1, 2011 at 10:00 a.m. in Room 1404** of the United States Courthouse, 75 Spring Street, SW, Atlanta, Georgia 30303. You or your attorney must attend the hearing and advocate your position.

Dated: October 5, 2011.

/s  
S. Gregory Hays  
Chapter 7 Trustee

Hays Financial Consulting, LLC  
3343 Peachtree Road, NE  
Suite 200  
Atlanta, GA 30326  
T: (404) 926-0060  
F: (404) 926-0055

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 11-58054-JRS |
| | : | |
| CAROL A. GODFREY, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |

**MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

COMES NOW S. Gregory Hays, Chapter 7 Trustee for Debtor Carol A. Godfrey (the "Trustee"), and hereby files this Motion for Order Authorizing and Approving Sale of Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests, showing the Court as follows:

**Jurisdiction and Venue**

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Background**

2.  Carol A. Godfrey ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 16, 2011 ( the "Petition Date"). S. Gregory Hays was appointed Chapter 7 trustee and is duly qualified.

3.  At the commencement of the Bankruptcy Case, all legal and equitable rights of the Debtor are property of the bankruptcy estate, and the Trustee is the sole representative of the bankruptcy estate.

4.  The Debtor list real property described as 159 Rumble Drive with a value of $200,000 and an exemption thereon under Ga. Code Ann. § 44-13-100(a)(1) of $10,000 on her

Bankruptcy schedules.

5. Upon investigation by the Trustee, the property located at 159 Rumble Drive consists of three parcels of real property in Canton, Georgia (the "Properties") described as follows:

   a. 159 Rumble Drive, Canton, GA 30114 (Improved), Cherokee County LL 242,263;14TH DIST/L 6 Kingswood, Parcel # 14N22 105

   b. Rumble Drive, Canton, GA 30114 (Unimproved), Cherokee County LL 263;14 DIST/LOT 5 Kingswood, Parcel # 14N22 104

   c. Rumble Drive, Canton, GA 30114 (Unimproved), Cherokee County LL 263; 14TH DIST/LOT 7 KINGSWOOD, Parcel # 14N22 106

6. Trustee has exposed the Properties to the market and has been in negotiations with interested parties regarding its sale.

7. The Trustee proposes to sell the Properties to Robert Lewis Burns (the "Purchasers"), or to a substitute party as may later be identified, subject to Court approval and to higher and better bids.

8. The terms of the proposed sale are summarized below. The Trustee seeks Court approval of the sale substantially consistent with the following proposed terms:

   (a) Asset to be Purchased: the Properties as described above

   (b) Proposed Purchaser: Robert Lewis Burns

   (c) Purchase Price: $25,500.00 payable in cash at closing

   (d) Condition: "AS IS, WHERE IS, WITH ALL FAULTS"

   (e) Deposit: $3,000 deposit

   (f) Due Diligence: At Purchasers' expense

   (g) Brokers' Commission: 7% to the selling/listing broker(s)

(h) Free and Clear: The sale will be free and clear of liens, claims, and encumbrances pursuant to, *inter alia*, sections 105 and 363 of the Bankruptcy Code.

9. The complete proposed Purchase and Sale Agreement between Trustee and Purchaser is attached hereto as Exhibit "A"

## Relief Requested

10. Trustee requests that the Court approve the sale of the Properties to the Purchaser, or substitute party, free and clear of liens, claims, and encumbrances, and granting other related relief pursuant to Section 363 of the Bankruptcy Code.

## Basis for Relief:
## Approval of the Sale

11. Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105 of the Bankruptcy Code grants to the Court the authority to "issue any order, process or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a)

12. As authorized pursuant to § 363(f) of the Bankruptcy Code, the Trustee requests that the Court authorize a sale of the Property free and clear of all liens, claims, and encumbrances, with any liens, claims, and encumbrances attaching to the sale proceeds, such liens, claims, and encumbrances valid and effective against only said proceeds, to the same extent and with the same priority and subject to the same defenses, objections, and rights of avoidance that would otherwise exist. The Trustee shows a sale free and clear of liens, claims, and encumbrances is authorized with regard to any holder of a claim secured by a lien, because (i) the price at which the property is to be sold is greater than the aggregate of the liens on such property, (ii) the entities asserting liens on the property consent to its sale, or (iii) the entities

asserting Liens on the real property could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests.

13. On July 14, 2011, the Cherokee County Tax Commissioner filed three Fi Fa's on the Properties of $237.15, $397.07 and $237.15 for unpaid year 2010 property taxes. Even though the liens were filed after the filing of the bankruptcy petition, Trustee proposes to pay the tax liens along with the seller's share of year 2011 property taxes as typical expenses paid at the closing of the sale..

14. The Trustee shows that the proposed sale of the Property is beneficial to and in the best interests of the estate and its creditors. The proposed sale will allow the estate to obtain the maximum value for its assets. If the Court does not approve the proposed sale of the Property, it is likely that the value realized from this asset will be substantially lessened or could be nonexistent.

15. The Trustee further seeks the protections afforded to a purchaser with regard to sale transactions under § 363(m) of the Bankruptcy Code, which provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith.

16. Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986).

17. The Trustee submits that he and the Purchasers have proceeded in good faith. Therefore, the Trustee and the Purchasers are entitled to the protections of § 363(m) of the Bankruptcy Code.

18. The Trustee further requests that the Court waive the stay of the Order approving the sale as authorized under Federal Rule of Bankruptcy Procedure 6004(h).

**WHEREFORE,** the Trustee respectfully requests that the Court enter an order:

(a) authorizing and approving the sale the Property free and clear of all liens, claims, encumbrances, and other interests;

(b) providing that the proposed sale has been undertaken in good faith as that term is used in § 363(m) of the Bankruptcy Code;

(c) authorizing the sale to be consummated immediately as allowed by Bankruptcy Rule 6004(h);

(d) authorizing the payment of $10,000.00 to Carol A. Godfrey as payment of the Debtor's exemption in the Properties under Ga. Code Ann. § 44-13-100(a)(1); and

(e) granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 5th day of October, 2011.

/s
S. Gregory Hays
Chapter 7 Trustee

Hays Financial Consulting, LLC
3343 Peachtree Road, N.E.
Suite 200
Atlanta, Georgia 30326-1420
(404) 926-0060

# EXHIBIT "A"

# PURCHASE AND SALE AGREEMENT

Offer Date: 9.14.11

Georgia Association of REALTORS

2011 Printing

1. **Purchase and Sale.** The undersigned buyer ("Buyer") agrees to buy and the undersigned seller ("Seller") agrees to sell the Property with the following address: 139 Kumble Dr.
City Canton, County Cherokee, Georgia, Zip Code 30114-2880
TAXID/PIN# N14A/23-00000-105-000-000 together with all fixtures, landscaping, improvements, and appurtenances (except those identified in any Seller's Property Disclosure Statement attached hereto as not remaining with the Property) and as more particularly described in the Legal Description Paragraph below (all of which is hereinafter collectively referred to as "Property").

2. **Legal Description.** The full legal description of the Property is:
*[Select A, B or C below. The sections not marked shall not be a part of this Agreement.]*
☐ A. attached as an exhibit hereto;
☐ B. identical to the legal description for the property contained in the deed recorded in Deed Book _____, Page _____, et. seq., _____ County, Georgia records;
☒ C. described below:
Land Lot(s) 242, 263 of the 14 District, N/A Section/ GMD,
Lot 5, 6, 7 Block N/A, Unit _____, Phase/Section _____ of
Kingsport Subdivision/Development,
Plat Book _____, Page _____, et. seq., Cherokee County, Georgia according to the plat recorded in Cherokee County, Georgia records.

3. **Purchase Price and Method of Payment.** At closing, Buyer agrees to pay Seller the purchase price of the Property of
$ 20,000 $25,500.00 Twenty Thousand & no/100 Five Hundred x2cc MR U.S. Dollars;
cash, wire transfer of immediately available funds, or a cashier's check issued for the closing by a federally insured bank, savings bank, savings and loan association or credit union where the funds are immediately available. The above forms of payment shall be deemed to be the equivalent of Buyer paying all cash at closing which shall be the method of payment.

4. **Amount and Deposit of Earnest Money.** Buyer has paid to Superb Property Inc. ("Holder") earnest money
$ 3,000.00 check, OR $ _____ cash, which has been received by Holder. The earnest money shall be deposited in Holder's escrow/trust account (with Holder retaining the interest if the account is interest bearing) within five (5) banking days from the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days after receiving such notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon notice to Buyer.

5. **Closing Costs and Other Settlement Expenses.**
   A. **Items Paid By Buyer at Closing.** At closing, Buyer shall pay the following:
   1. Georgia property transfer tax;
   2. All costs, fees and charges to have the closing attorney search title and prepare: (a) the warranty deed; (b) owner's affidavit; (c) Buyer's powers of attorney; and (d) all promissory notes, deeds to secure debt and other loan documents required by any lender providing financing in the transaction;
   3. All closing costs, tax service charges, recording costs, courier fees, overnight delivery fees, document preparation fees, underwriting fees, delivery, copying and handling charges, and all other costs, fees, charges and amounts to close this transaction otherwise, except as they relate to the clearance of title encumbrances and/or defects necessary for Seller to be able to convey good and marketable title to the Property.

   B. **Items Paid By Seller at Closing.** At closing, Seller shall pay the following:
   1. The sum of $ -0- to be used by Buyer as a contribution for the items in the paragraph above. In addition, Buyer may use the Seller's contribution to pay for, including but not limited to, survey costs, appraisals, insurance (including flood insurance, if applicable), inspections, termite treatment and/or repair guarantee and, if Buyer is obtaining mortgage financing, escrow establishment charges, loan discount points, costs to buy down a loan, and other similar costs (unless any of the same are prohibited by Buyer's mortgage lender). Unspent sums, if any, shall remain with the Seller.
   2. Except as provided above, all sums, costs, charges and fees necessary to clear title encumbrances and/or defects to allow Seller to be able to convey good and marketable title to the Property.
   3. Any extra costs, fees and charges resulting from Seller not being able to attend the closing in person.

C. **Prorated Amounts:** Seller and Buyer agree to prorate the following: (1) real estate taxes and community association assessments, if any, for the calendar year in which the sale is closed, as of the date of closing; and (2) all utility bills, solid waste and other fees, as of the date of closing (or the day of possession of Property by Buyer, whichever is later) that are issued after closing and include service for any period of time Property was owned/occupied by Seller or Seller's invitees. In the event real estate taxes are paid at closing based upon an estimated tax bill or tax bill under appeal, Buyer and Seller upon the issuance of the actual tax bill or the appeal being resolved shall promptly make any financial adjustments between themselves as are necessary to prorate the tax bill correctly. This subparagraph shall survive the closing.

6. **Closing and Transfer of Possession.**
   A. **Closing:** This transaction shall be closed on _as soon as possible_ or on such other date as may be agreed to in writing by the parties. No later than at the conclusion of the closing, Seller shall provide the Buyer with all keys in Seller's possession or under Seller's control, to all locks that shall remain with the Property.
   B. **Right to Extend Unilaterally the Closing Date:** Buyer or Seller may unilaterally extend the closing date for seven (7) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (except for liens, judgments, and deeds to secure debt that can be satisfied through the payment of money or by bonding off the same); or (2) Buyer's mortgage lender, if any, (including in "all cash" transactions) or the closing attorney cannot fulfill their respective obligations by the date of closing due to no fault of Buyer. In such event, Buyer and Seller consent to the closing attorney and/or any such mortgage lender disclosing to the parties and their Brokers the basis for the delay. The exercise of the right to extend unilaterally the closing date by either party shall cause the right to extend unilaterally the closing date to terminate and no longer be a part of this Agreement.
   C. **Possession:** Buyer agrees to allow Seller to retain possession of Property until and through:
   *[Select one. The sections not marked shall not be a part of this Agreement.]*
   ☐ 1. the closing; OR ☐ 2. _____ hours after the closing; OR ☐ 3. _____ days after the closing at _____ o'clock _____.m.

7. **Closing Attorney.** This transaction shall be closed by the law firm of _____.
If Buyer is given the right to select a law firm from a mortgage lender's approved list of closing attorneys, Buyer agrees to select said law firm. If the law firm named above is not on the mortgage lender's approved list, and cannot be added in time to close this transaction, Buyer may select another law firm from lender's approved list to close this transaction. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the:
☑ Buyer OR ☐ Seller. If the closing attorney declines to represent the party selected, the party may select a different closing attorney.

8. **Title.**
   A. **Warranty:** Seller warrants that at the closing Seller will convey good and marketable title to said Property by general warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   B. **Examination:** Buyer may examine title and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   C. **Survey:** A survey of Property is ☐ OR is not ☑ attached to this Agreement as an exhibit. Notwithstanding any other provision to the contrary contained herein, Buyer shall have the right to terminate this Agreement upon notice to Seller if a new survey performed by a surveyor licensed in Georgia is obtained which is materially different from any survey attached hereto as an exhibit with respect to Property. The term "materially different" shall not apply to any improvements constructed by Seller in their agreed-upon locations subsequent to Binding Date Agreement. Matters revealed in said survey shall not relieve the warranty of title obligations of Seller referenced above.

9. **Risk of Damage to Property.** Seller warrants that at the time of closing or upon the granting of possession, if at a time other than at closing, Property will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for normal wear and tear, and changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement not later than fourteen (14) days from receipt of the above notice, except that any party who causes the Property to be destroyed or substantially damaged as the result of that party's criminal conduct shall forfeit the right to terminate this Agreement and shall be in default hereunder. If Buyer or Seller does not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

10. **Inspection.**
    A. **Right of Buyer to Inspect Property:** Buyer and/or Buyer's representatives shall have the right to enter Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test and survey Property. Seller shall cause all utility services and any pool, hot tub and similar items to be operational so that Buyer may complete all inspections under this Agreement. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries, and damages arising out of or related to the exercise of these rights.

B. **Duty of Buyer to Inspect Neighborhood:** Buyer acknowledges that: (1) in every neighborhood there are conditions which different buyers may find objectionable and (2) Buyer has had the full opportunity to become acquainted with all existing neighborhood conditions (and proposed changes thereto) which could affect the Property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, prisons, stadiums, odor and/or noise producing land uses, crime, schools serving the Property, political jurisdictional maps and land use and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.

11. **Property Sold Subject to Due Diligence Period or "As-Is."**
    *[Select Section A. or B. below. The section not marked shall not be a part of this Agreement.]*
    ☒ A. **Property Sold Subject to Due Diligence Period.**
    1. **Contract is Option Contract.** For and in consideration of the additional payment of Ten Dollars ($10) by the Buyer to the Seller, the receipt and sufficiency of which is hereby acknowledged, Seller does hereby grant Buyer the option of terminating this Agreement, for any reason, for a ___10___ day period from the Binding Agreement Date ("Due Diligence Period"). This Agreement shall be an option contract until the Due Diligence Period has ended without Buyer terminating the same.
    2. **Purpose of Due Diligence Period.** During the Due Diligence Period, Buyer may, but shall not be required to: (a) arrange any loans Buyer needs to complete the purchase of the Property; and (b) conduct at Buyer's sole expense whatever evaluations, inspections, appraisals, examinations, surveys, and testing, if any, Buyer deems appropriate to determine whether Buyer's option to terminate this Agreement should be exercised. This shall include but not be limited to testing for lead-based paint and/or lead-based paint hazards, inspecting for active infestation of and/or damage from termites and other wood destroying organisms and determining if the Property or the improvements thereon are in a flood plain. During the Due Diligence Period, Buyer may also propose an amendment(s) to this Agreement to address any concerns of Buyer with the Property.
    3. **Right to Terminate.** If Buyer decides to exercise Buyer's option to terminate this Agreement, Buyer must give notice of the same to Seller prior to the end of the Due Diligence Period. If Buyer fails to give such notice in a timely manner, the Due Diligence Period shall terminate and Buyer shall be deemed to have accepted the Property "as-is." The expiration of the Due Diligence Period shall not terminate any other contingencies to which this Agreement may be subject.
    4. **Warranties of Buyer.** Buyer warrants that Buyer is ☒ OR is not ☐ currently under contract (including option contracts) to purchase other real property. Buyer warrants that during the Due Diligence Period Buyer shall ☒ have the right to enter into other such contracts OR ☐ not enter into any other such contracts. Buyer shall be in default of the Agreement if Buyer breaches Buyer's warranties in this subparagraph.
    ☐ B. **Property Sold "As Is."** All parties agree that Property is being sold "as is," with all faults including but not limited to damage from termites and other wood destroying organisms and lead-based paint and lead-based paint hazards. Seller shall have no obligation to make any repairs or replacements to Property.

12. **Return and Disbursement of Earnest Money.**
    A. **Return of Earnest Money to Buyer:** Subject to the Disbursement of Earnest Money paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
    B. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties fifteen (15) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the fifteen (15) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new fifteen (15) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made.

    Holder shall offer to disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that Seller has terminated the Agreement due to Buyer's default; and (2) sends the required fifteen (15) day notice of the proposed disbursement to Buyer and Seller. If the check is accepted and deposited by Seller, it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer. Such liquidated damages are not a penalty and are instead a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain. Nothing herein shall prevent the Seller from declining the tender of the earnest money by the Holder. In such event, Holder, after giving Buyer and Seller the required fifteen (15) day notice of the proposed disbursement, shall disburse the earnest money to Buyer.

    C. **Interpleader:** If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.

D. **Hold Harmless:** All parties hereby agree to indemnify and hold Holder harmless from and against all claims, causes of action, suits and damages arising out of or related to the performance by Holder of its duties hereunder. All parties further covenant and agree not to sue Holder for damages relating to any decision of Holder to disburse earnest money made in accordance with the requirements of this Agreement.

13. **Agency and Brokerage.**
    A. **Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A § 10-6A-1 et. seq.;
        1. **No Agency Relationship.** Buyer and Seller acknowledge that, if they are not represented by a Broker, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
        2. **Listing Broker.** Broker working with the Seller is identified on the signature page as the "Listing Broker"; and said Broker is ☑ OR is not ☐ representing Seller;
        3. **Selling Broker.** Broker working with Buyer (including in transactions where Broker is representing Seller) is identified on the signature page as "Selling Broker;" and said Broker is ☑ OR is not ☐ representing Buyer; and
        4. **Dual Agency or Designated Agency.** If Buyer and Seller are both being represented by the same Broker, a relationship of either designated agency ☐ OR dual agency ☐ shall exist.
            a. **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above.]*
               Buyer and Seller are aware that Broker is acting as a dual agent in this transaction and consent to the same. Buyer and Seller have been advised that:
               (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
               (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
               (3) Buyer and Seller do not have to consent to dual agency and, the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
               (4) Notwithstanding any provision to the contrary contained herein, Buyer and Seller each hereby direct Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
            b. **Designated Agency Assignment.** *[Applicable only if the designated agency has been selected above.]*
               Broker has assigned _____N/A_____ to work exclusively with Buyer as Buyer's designated agent and _____ to work exclusively with Seller as Seller's designated agent. Each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
    B. **Brokerage:** Seller has agreed to pay Listing Broker(s) a real estate commission pursuant to that certain brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). Pursuant to the terms of the Listing Agreement, the Listing Broker has agreed to share that commission with the Selling Broker.
    
    The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said commission. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the Seller of the obligation to pay the remainder thereof after the closing unless the Broker(s) have expressly and in writing agreed to accept the lesser amount in full satisfaction of the Broker(s) claim to a commission.
    C. **Material Relationship Disclosure:** Brokers and/or their affiliated licensees have the following material relationship(s) with either Buyer and/or Seller as follows: _____N/A_____

14. **Disclaimer:** Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers other than what is expressly included in this Agreement and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter including but not limited to the following: any matter which could have been revealed through a survey, title search or inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction and repair techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this Agreement and transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect Property; the terms, conditions and availability of financing; and the uses and zoning of Property, whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they should seek independent expert advice relative thereto. Buyer and Seller acknowledge that Brokers shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services.

15. **Lead-Based Paint.** To the best of Seller's knowledge, a portion of any residential dwelling on the Property was ☐ OR was not ☐ built prior to 1978. If any portion of a residential dwelling was built prior to 1978, the Lead-Based Paint Exhibit must be and is hereby attached as an exhibit to this Agreement by Seller. For the purposes of this paragraph, the term "residential dwelling" shall include any painted fixture, component or material used therein that was built or manufactured prior to 1978. Any repair work in which lead-based paint is disturbed should be done in accordance with the EPA's Renovate Right brochure and other related materials.

16. **Notices.**
    A. **All Notices Must Be In Writing.** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice. It is the intent of the parties that the requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding.
    B. **Method of Delivery of Notice.** Subject to limitations and conditions set forth herein, notices may only be delivered: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); (4) by registered or certified U. S. mail, prepaid, return receipt requested; or (5) by e-mail.
    C. **When Notice Is Deemed Received.** Except as may be provided herein, a notice shall not be deemed to be given, delivered or received until it is actually received by the party to whom the notice was intended or that person's authorized agent. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted to either the party or the party's authorized agent provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent.
    D. **When Notice to Broker is Notice to Broker's Client.** Except in transactions where the Broker is practicing designated agency, notice to the Broker or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that party. Said Broker and affiliated licensee shall be authorized agents of the party for the purpose of receiving notice. In any transaction where the Broker is practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the party intended to receive the same or that party's authorized agent.
    E. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of a Broker.** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth in the Broker/Licensee Contact Information section of the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included in the Broker/Licensee Contact Information section of the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures) then notice by the means of communication not provided shall not be valid for any purpose herein. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party. Any party sending notice by FAX or email shall send an original copy of the notice if so requested by the other party. A faxed or emailed signature of a party shall constitute an original signature binding upon that party.
    F. **Notice to Unrepresented Party.** A party who is not represented by a Broker in the transaction may receive notices by Fax or e-mail at the e-mail address or fax number, if any, of the party set forth below or at such other fax number or e-mail address as the party may provide following the notice procedures set forth herein. If no e-mail address or fax number is provided for below, or is subsequently provided by the party following the notice procedures set forth herein, then notice through the means of communication not provided shall not be valid for any purpose herein.

    Unrepresented Buyer:                                      Unrepresented Seller:
    Fax No._____                    Fax No._____
    E-Mail Address: _____                   E-Mail Address: _____

17. **Default.**
    A. **Rights of One Party Against Another Party:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.
    B. **Rights of Broker Against Defaulting Party:** In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the broker(s) actual damages and are not a penalty. In the event a real estate broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the real estate broker shall only have such remedies against the defaulting party as are provided for in such agreement.

18. **Other Provisions.**
    A. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
    B. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.
    C. **Binding Effect, Entire Agreement, Modification, Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written agreement of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.
    D. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; and (3) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.
    E. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of the State of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.                        F20, Purchase and Sale Agreement, Page 5 of 7, 01/01/11

F. **Time of Essence:** Time is of the essence of this Agreement.
G. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.
H. **Binding Agreement Date:** The Binding Agreement Date in this Agreement shall be the date when the party making the last offer, or the Broker (except in a designated agency transaction) or affiliated licensee of Broker representing that party as a client, receives notice that the offer has been accepted. This party (or the Broker or affiliated licensee representing this party as a client) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party. Filling in the Binding Agreement Date shall not be deemed to be a counteroffer.
I. **Responsibility to Cooperate:** All parties agree to take all actions and do all things reasonably necessary to fulfill the terms and conditions of this Agreement in good faith and in a timely manner. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements as are required at closing to meet the requirements of any lender(s) and of federal and state law.
J. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") makes certain standard real estate forms available to its members. These GAR forms are frequently provided to the parties in real estate transactions by the REALTORS® with whom they are working. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

19. **Receipt By Buyer of Consumer Protection Brochure.** Buyer acknowledges that Buyer ☐ has OR ☐ has not received a copy of the GAR brochure entitled "Protect Yourself When Buying a Home" (Form F13).

20. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

    ☐ Legal Description of the Property as Exhibit "_____"
    ☐ Financing Contingency as Exhibit "_____"
    ☐ The ☐ FHA Loan Exhibit OR ☐ VA Loan Exhibit OR ☐ Conventional Financing Exhibit as Exhibit "_____"
    ☐ A Survey of Property as Exhibit "_____"
    ☐ Appraisal Contingency as Exhibit "_____"
    ☐ Seller's Property Disclosure Statement as Exhibit "_____"
    ☐ Lead-Based Paint Exhibit as Exhibit "_____"
    ☐ Source of Buyer's Funds as Exhibit "_____"
    ☐ Sale or Lease of Buyer's Property Contingency as Exhibit "_____"
    ☐ Back-up Agreement Contingency as Exhibit "_____"
    ☐ Community Association Disclosure as Exhibit "_____"
    ☐ Other _____
    ☐ Other _____
    ☐ Other _____
    ☐ Other _____
    ☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1. Buyer Reserves the Right to have home inspected by a licensed state home inspector.

2. This contract is subject to Bankruptcy Court Approval.

*[signatures dated 10/4/11]*

Copyright© 2011 by Georgia Association of REALTORS®, Inc.    F20, Purchase and Sale Agreement, Page 6 of 7, 01/01/11

Additional Special Stipulations are ☐ or are ☒ not attached.

**Time Limit of the Offer:** The terms of this Agreement shall constitute an offer ("Offer") which shall expire at _____ o'clock _____ .m. on the date of _____ unless prior to that time the Offer is accepted in writing and notice of the acceptance is delivered to the party who made the Offer.

_[signature]_          _[signature]_ as TRUSTEE
Buyer's Signature          Seller's Signature

Robert Lewis Burns          S. Gregory Hays as TRUSTEE For
Print or Type Name          Print or Type Name
                                             Carol A. Godfrey

_____          _____
Buyer's Signature          Seller's Signature

_____          _____
Print or Type Name          Print or Type Name

SUPERB PROPERTIES, INC.
Selling Broker          Listing Broker

By: _[signature]_          By: _____
Broker or Broker's Affiliated Licensee          Broker or Broker's Affiliated Licensee

Regina Warden          _____
Print or Type Name          Print or Type Name

SUPR01     H-31056          _____
MLS Office Code    Brokerage Firm License Number          MLS Office Code    Brokerage Firm License Number

Multiple Listing Number 4251192

Selling Broker/Licensee Contact Information:          Listing Broker/Licensee Contact Information:

Phone# 404-327-7724          Phone# _____

Fax# 404-327-7725          Fax# _____

E-Mail SuperbProperties@msn.com          E-Mail _____

212296          _____
Selling Agent's Georgia Real Estate License Number          Listing Agent's Georgia Real Estate License Number

Member of: _____ of REALTORS®          Member of: _____ of REALTORS®

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____ and has been filled in by _____.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.          F20, Purchase and Sale Agreement, Page 7 of 7, 01/01/11

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date set forth below, the foregoing **NOTICE OF HEARING** and **MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS** was served by first class U.S. mail, postage prepaid, upon the parties identified below by first class U.S. mail:

Office of the U.S. Trustee
362 Richard B. Russell Federal Building
75 Spring Street SW
Atlanta, Georgia 30303

Jeffrey M. Heller
J. M. Heller
Suite 203
151 West Main St.
Canton, GA 30114

Carol A. Godfrey
161 William Bobo Drive
Canton, GA 30115

Sonya Little
Cherokee County Tax Commissioner
2780 Marietta Hwy.
Canton, GA 30114

This 5th day of October, 2011.

/s
S. Gregory Hays
Chapter 7 Trustee

Hays Financial Consulting, LLC
3343 Peachtree Road, N.E.
Suite 200
Atlanta, Georgia 30326-1420
(404) 926-0060